# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. CURRAN III, | : | **CASE NO. 1:12-CV-00749** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| M&T BANK CORPORATION, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

In this civil action, the defendants have filed two motions to dismiss and a separate motion for sanctions. For the reasons set forth herein, I recommend that the motions to dismiss be granted, but the motion for sanctions be denied.

## I.  Background and Procedural History.

The *pro se* plaintiff, John Curran ("Curran"), initiated this action on April 20, 2012, when he filed a complaint against the following four defendants: (1) M&T Bank Corporation ("M&T"); (2) Gates, Halbruner, Hatch & Guise, P.C. (the "Law Firm"); (3) Lowell R. Gates, Esq. ("Gates"); and (4) Ryan Shafik ("Shafik"). *Doc.* 1. Curran also paid the requisite filing fee.[1] *Doc.* 5. Thereafter, Curran did

---

[1]  By way of additional background, on November 14, 2011, Curran filed a complaint in *Curran v. Carbon Spyder*, 1:11-CV-02127-YK-SES, naming eight defendants including M&T, the Law Firm, and Gates. On January 25, 2012, Magistrate Judge Smyser recommended granting the defendants' motion to dismiss for lack of subject matter jurisdiction and for Curran's failure to serve the defendants in accordance with the Federal Rules of Civil Procedure. 1:11-CV-

not serve his complaint on the defendants; instead, on April 27, 2013, Curran filed

an amended complaint. *Doc.* 3. In the amended complaint, Curran alleges the

following factual allegations.[2]

According to Curran, he filed this action based on evidence admitted during

a bench trial in a separate lawsuit, *Shafik v. Curran*, *infra*, for breach of contract.

*Doc.* 3 at 1. Curran also maintains that the Court has subject matter jurisdiction

over his claims pursuant to both 28 U.S.C. § 1331 and 28 U.S.C. § 1332. *See id.* at

2.

---

02127, *Doc.* 38. On March 29, 2012, the Court adopted Judge Smyser's report and
recommendation, but gave Curran leave to amend. 1:11-CV-02127, *Doc.* 46.
Accordingly, Curran filed three separate documents entitled "amended
complaints." *See Doc.* 4. Only one of those documents had the case number from
*Curran v. Carbon Spyder*. *Id.* As well, Curran included a letter in the packet
stating that he broke the case down into two separate matters. *Id.* Judge Smyser
and the Clerk of Court discussed how to proceed, and it was agreed that the
documents would be filed in separate cases. *Id.*

Curran was also a defendant in *Shafik v. Curran*, Case No. 1:09-CV-02469-
MCC. In *Shafik*, following a bench trial before Judge Smyser, judgment was
entered against Curran for breach of contract. Curran subsequently filed a cross-
complaint against several defendants including M&T, the Law Firm, and Gates.
1:09-CV-02469, *Doc.* 86. On, November 3, 2011, the cross-complaint was
stricken from the record. 1:09-CV-02469, *Doc.* 89. Since the judgment was
entered against him, Curran has also proceeded to file an appeal to the Third
Circuit and numerous motions to stay execution of the judgment. Further, Curran
remains in contempt of Court for failing to comply with repeated discovery
requests in aid of execution of the judgment. *See* 1:09-CV-02469, *Docs.* 130 &
145.

[2] These factual allegations are supplied only to provide background. No
judgment is passed on actual their veracity.

With respect to M&T, Curran raises a claim for fraud and breach of contract. *Id.* Curran alleges that M&T's principal office is in Buffalo, New York. *Id.* While exploring a bid for the United States Senate, Curran claims that he entered into a depositor's agreement with M&T for the purpose of holding an operating account. *Id.* After opening the operating account, however, Curran claims that an M&T employee divulged personal information to Shafik via email.[3] *Id.* Curran does not allege what information was divulged, when it was divulged, or how he knows it was divulged. Nevertheless, Curran claims that Shafik was not a party to the depositor's agreement, "had not received any check written on the account, nor had made any deposit into the [account]." *Id.* Thus, Curran alleges, "Such a release … was a breach of the depositor's agreement. [And, s]uch information was not made based upon a deposition or discovery request by [Shafik or Gates]." *Id.* at 2-3. Consequently, Curran seeks compensatory and punitive damages in excess of $100,000 in addition to a "public apology…in a manner and forum acceptable to [him]." *Id.* at 3.

With respect to the Law Firm and Gates, Curran raises a claim for coercion, malpractice, slander, and libel. *Id.* Curran alleges that the Law Firm's principal place of business is in Pennsylvania and that Gates is also a Pennsylvania citizen

---

[3]     While it is not alleged in Curran's complaint, the Court takes judicial notice of the fact that Shafik is a political consultant, who helped organize Curran's failed bid for the United States Senate. *See generally, Doc.* 74 (1:09-CV-02469-MCC).

and resident. *Id.* Curran claims that in 2009 the Law Firm and Gates prepared and sent to him a letter making a demand for payment, for Shafik, who was the Law Firm's and Gates' client. *Id.* According to Curran, however, neither defendant provided any evidence at the bench trial in *Shafik v. Curran* to support the demands made in the letter. *Id.* Also, Curran claims that "the introduction of the unsubstantiated allegations at the [bench] trial memorialized the act of coercion against [him]." *Id.* Next, Curran alleges that "the subsequent ruling of the court determined that the defendants did not provide any evidence to support [allegations the defendants made]." *Id.* at 4. Rather, Curran purports that the allegations made at the bench trial were introduced solely to undermine his character. *Id.* Given the "absence of evidence," Curran claims that the defendants "clearly" committed malpractice. *Id.* In addition, Curran claims that the Law Firm and Gates identified to "a third party" that "they would accept 100K, to make it stop." *Id.* According to Curran, such a statement was a "clear strong arm tactic" unsupported by evidence. *Id.* Consequently, Curran seeks $1.5 million, punitive damages, and a public apology against the Law Firm and Gates. *Id.*

Last, Curran alleges that Shafik is a citizen of Pennsylvania. *Id.* Curran raises claims against Shafik for fraud, defamation, and libel. *Id.* Curran claims that during the bench trial in *Shafik v. Curran*, Shafik provided false and misleading testimony. *Id.* at 5. According to Curran, Shafik claimed that "the[ir]

4

agreement" was prepared by his attorney. *Id.* Curran makes no mention of what the agreement entailed; however, Curran maintains that the statement was false and made only to sway Judge Smyser's ruling. *Id.* Consequently, Curran seeks an amount in excess of $100,000 in compensatory damages "for the costs associated with [*Shafik v. Curran*]" in addition to punitive damages. *Id.*

After filing his amended complaint, Curran did not serve it on the defendants within the 120 day period under Federal Rule of Civil Procedure 4(m). On December 10, 2012, I issued an order requiring Curran to show cause within 60 days why his amended complaint should not be dismissed for his failure to timely serve the defendants. *Doc.* 10. Curran did not respond; instead, the record reflects that on March 4, 2013, the summons were returned executed on Shafik, the Law Firm, and Gates.[4] *Doc.* 11 at 1, 2. In addition, the record reflects that Curran served M&T on April 15, 2013. *Doc.* 12.

On May 7, 2013, M&T filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 4(m), 8(a), 9(b) and 12(b)(6). *Doc.* 14. M&T also filed a timely corresponding brief in support. *Doc.* 15. Similarly, on May 29, 2013, the Law Firm, Gates, and Shafik, filed a motion to dismiss for lack of subject matter jurisdiction and pursuant to Federal Rules of Civil Procedure 4(m), 8(a), 9(b),

---

[4]     These defendants dispute that they were ever served or received notice. *Doc.* 19 at 7-8. In fact, they assert that they only became aware of the case after being contacted by M&T's attorney about why they had not filed a responsive pleading. *Id.*

12(b)(2), 12(b)(5), 12(b)(6), and 41.  *Doc.* 17.  On June 11, 2013, they filed a

corresponding brief in support.  *Doc.* 19.  Then, on June 12, 2013, the Law Firm,

Gates, and Shafik filed a motion for sanctions along with a corresponding brief.

*Docs.* 20 & 21.  Subsequently, on June 12, 2013, I ordered Curran to file a brief in

opposition to each of the motions by July 3, 2013.  *Doc.* 22.  On July 8, 2013, the

Clerk of Court received and filed Curran's response.[5]  *Doc.* 23.  Thereafter, the

defendants, respectively, filed timely reply briefs.  *Docs.* 24, 25 & 26.  The

motions, having been fully briefed, are ripe for disposition on the merits.[6]

## II.    Discussion.

### A. Subject Matter Jurisdiction.

Here, while the defendants do not bring a motion to dismiss under Rule

12(b)(1), they indirectly allude to the apparent lack of subject matter jurisdiction

over Curran's claims.  As federal courts are of limited jurisdiction, they have a

continuing duty to satisfy themselves of jurisdiction before addressing the merits of

a case.  *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993).

---

[5]    Despite being untimely filed, I will exercise my discretion to consider
Curran's brief in opposition.

[6]    On September 25, 2013, Curran filed what I construe to be a motion to strike
the defendants' reply briefs (*Doc.* 27).  However, in accordance with the Local
Rules, Curran failed to file a brief in support.  I recommend, therefore, that
Curran's motion be stricken from the record.  To the extent that the Court disagrees
and construes this document as a sur-reply, I would still recommend striking the
document for Curran's failure to seek leave of Court.

Thus, regardless of whether subject matter jurisdiction is affirmatively challenged by a party, federal courts have an obligation to address issues of subject matter jurisdiction *sua sponte*. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (citation omitted); *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 502 (3d Cir. 2002).

In his complaint, Curran pleads that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *Doc.* 3 at 2. For a federal court to have federal question jurisdiction pursuant to § 1331, however, the action must "aris[e] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. A case meets that standard and arises under federal law "if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citation omitted). Moreover, a federal court may exercise jurisdiction over state-law claims, so long as those types of claims "implicate significant federal issues." *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F.Supp.2d 576, 579 (E.D.Pa. 2007). Here, the Court cannot exercise federal question jurisdiction over Curran's claims as they arise solely under state law and implicate no significant federal issues.

My analysis does not end here, though. Curran appears to alternatively seek to invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See Doc.*

3 at 2.   Under § 1332, district courts have original jurisdiction to hear cases where the matter in controversy exceeds the value of $75,000 and is between citizens of different states.  28 U.S.C. § 1332(a)(1). In order for jurisdiction to exist, there must be complete diversity, meaning that each defendant must be a citizen of a different state from each plaintiff.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

"It is ... well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived." *Thomas v. Bd. of Trs.*, 195 U.S. 207, 211 (1904).  Moreover, "[w]hen the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977); *see also* Fed R. Civ. P. 12(h)(3).

With respect to natural persons such as Gates and Shafik, a natural person is deemed to be a citizen of the state where he is domiciled. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *Krasnov v. Dinan*, 465 F.2d 1298, 1300–01 (3d Cir. 1972).

A person may have only one domicile, and thus may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619 (1914). In his amended complaint, Curran, proceeding *pro se*, asserts that both natural defendants are citizens of Pennsylvania, while he is a citizen of Maryland. *See Doc.* 3 at 3, 4. Additionally, Curran's prayer for damages exceeds the amount in controversy. Accordingly, the Court should exercise diversity jurisdiction over Curran's claims against Shafik and Gates.

By contrast, a corporation may have more than one state of citizenship: "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation may only have one principal place of business, and proper invocation of diversity jurisdiction requires that the plaintiff allege where a corporation has "its principal place of business." *See S. Freedman & Co., Inc. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006) (affirming the district court's dismissal of a complaint alleging where the plaintiff corporation maintained "a principal place of business," rather than "its principal place of business"). A corporation's principal place of business is its "nerve center," that is, the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

In his amended complaint, Curran asserts that M&T's "principal office" is in

New York, while the Law Firm's principal place of business is in Pennsylvania. *Doc.* 3 at 2, 3. Further, Curran prays for damages in excess of the amount in controversy. Insofar as Curran avers that M&T's "principal office" is in New York, his pleading misses the mark. *See, e.g.*, *Koslowski v. Hartz Mountain Corp.*, No. 3:12-CV-1200, 2012 WL 2524958, at *2 (M.D. Pa. June 29, 2012)(finding that the notice of removal failed to sufficiently plead the citizenship of the corporate defendant where it was alleged that the defendant "is a 'corporate citizen' of New Jersey and that it has a 'principal office' there…"). Therefore, while the Court should exercise diversity jurisdiction over Curran's claims against the Law Firm, it should not exercise jurisdiction over his claims against M&T.

### B. Service of Process.

The defendants, collectively, argue that Curran's amended complaint should be dismissed for his failure to comply with (1) Federal Rule of Civil Procedure 4(m)'s 120 day service requirement and (2) my order requiring Curran to show cause within 60 days why his case should not be dismissed. *Docs.* 14 at 1 & 19 at 6. The Law Firm, Gates, and Shafik, also move for dismissal under Rule 12(b)(2) and 12(b)(5), for insufficient service of process. *Doc.* 19 at 5-7. In opposition, Curran provides no argument, other than to state that he properly served the defendants. *See Doc.* 23 at 2.[7]

---

[7] Curran also argues that a report and recommendation was filed in his favor,

## 1. Rule 4(m) Motion to Dismiss.

Rule 4 of the Federal Rules of Civil Procedure prescribes the method by which service can be made, and describes how a party must demonstrate proof of service on the record. *See* Fed.R.Civ.P. Rule 4(a)-(l). Rule 4 also sets time limits for service, and prescribes the sanction of dismissal for the failure to make proper and timely service, stating as follows:

> (m) Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action ... against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. Rule 4(m). The language of Rule 4(m) is both clear and mandatory. Where there is an unjustified and unexcused failure to timely serve a complaint the court "must dismiss the action."

It is also clear that "the party asserting the validity of service bears the burden of proof on that issue. *See* Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987)." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). When the plaintiff fails to

---

on this issue. *Doc.* 23 at 2-3. But, there is no such filing on the docket. The only other report and recommendation that was filed in this case was issued by Judge Smyser on May 31, 2012. *Doc.* 4. In that report and recommendation, Judge Smyser recommended dismissing Curran's amended complaint for his failure to timely pay the filing fee. *Id.*

carry this burden of proof on the issue of proper and timely service, consistent with Rule 4(m)'s mandate that the "court—on motion or on its own after notice to the plaintiff—must dismiss the action," dismissal of the case is entirely appropriate. Indeed, when a plaintiff does not show good cause for a failure to serve; *Beckerman v. Susquehanna Township Police*, 254 F. App'x 149, 154 (3d Cir. 2007), or fails to make service, despite warnings and requests by the court to address service issues, *Foster v. Pennsylvania Human Relations Commission*, 157 F. App'x 488, 490 (3d Cir. 2005), the courts have frequently dismissed parties.

Here, Curran failed to timely serve the defendants under Rule 4(m). Rather than complying with the 120 day requirement, Curran waited until he was compelled to serve process on the defendants. Even then, Curran waited another 120 days before attempting to effectuate service of process on any of the defendants, and never once showed cause for his failure to timely serve the defendants. Accordingly, the defendants' motion to dismiss under Rule 4(m) should be granted.

## 2. Rule 12(b)(5) Motion to Dismiss.

In comparison to the previous motion for dismissal under Rule 4(m), only the Law Firm, Gates, and Shafik move to dismiss Curran's amended complaint for insufficient service of process. Rule 4 of the Federal Rules of Civil Procedure "sets forth the procedure by which a court obtains personal jurisdiction over the

defendant," *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996), through valid service of process. The Rule prescribes the process for properly issuing and serving a summons. Fed.R.Civ P. 4. Pursuant to Rule 4, a summons must, *inter alia*, name each individual plaintiff and defendant and "be directed to the defendant." Fed.R.Civ.P. 4(a)(1)(A), (B). When a complaint names more than one defendant, a separate summons "must be issued for each defendant to be served." Fed.R.Civ.P. 4(b). A defendant may move to dismiss the complaint or quash service when a plaintiff fails to comply with Rule 4's requirements for the form and method of serving process. Fed.R.Civ.P. 12(b)(4), (b)(5).

In the case of motions challenging the sufficiency of process or method of service, the burden of proof lies with the party raising the challenge. *See* 2 Moore's Federal Practice § 12.33[1] (3d ed. 2013); *see also Grand Ent. Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993); *Snyder v. Bender*, No. 1:09–CV927, 2010 U.S. Dist. LEXIS 130438 (M.D.Pa. Nov. 16, 2010). The movant must be specific in its objections and identify the specific manner in which the plaintiff has failed to satisfy the summons or service provision utilized. 2 Moore's § 12.33[1].

Further, it is axiomatic that absent strict compliance with Rule 4's summons and service requirements, "a court ordinarily may not exercise power over a party the complaint names as a defendant." *Murphy Bros. v. Michetti Pipe Stringing*, 526

U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Miss. Pub. Corp. v. Murphree*, 327 U.S. 438, 444–45 (1946) ("Service of summons is the procedure by which a court ... asserts jurisdiction over the person of the party served.")).  To that end, the Third Circuit has observed that the "failure of a plaintiff to obtain valid process from the court" deprives a court of personal jurisdiction over the defendant and "is fatal to the plaintiff's case." *Ayres*, 99 F.3d at 569 (dismissing case when summons was not signed and sealed by the clerk as required by Rule 4(a)(1)(F) and (G)).  Specifically, the panel in *Ayres* held that when a summons is *prima facie* defective and violative of Rule 4, "such suit should be dismissed under Federal Rule of Civil Procedure 12(b)(2)." *Id.*  Moreover, even a properly issued summons is nonetheless ineffective for purposes of conferring personal jurisdiction if it has not been served in compliance with Rule 4's service of process provisions. Id. at 570.

Here, the Law Firm, Gates, and Shafik contend that dismissal under Rule 12(b)(2) and (b)(5) is proper because they were not timely served with process under Rule 4.  They never precisely address this argument, however, other than to contend that they were never timely served within the timeframe established in

14

Rule 4(m). In fact, the defendants argue that they were never served with process (*Doc.* 19 at 7), despite evidence to the contrary (*see Doc.* 12 at 1-2). Regardless of whether these defendants were ever actually served, dismissal is warranted given that service of process was untimely, as stated in the previous section. As well, Curran was given an opportunity to show cause why he did not serve process, but he simply disregarded my Order and proceeded to wait another 120 days before even attempting to serve process on these defendants. Moreover, regardless of whether the defendants were contacted prior to any service of process so as to put them on notice (*see Doc.* 23 at 2), or whether service was made past the deadlines discussed, it is well-established that "notice cannot by itself validate an otherwise defective service." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993). Therefore, the Court has no personal jurisdiction over these defendants, and the defendants motion under Rule 12(b)(2) and 12(b)(5) should be granted.[8]

---

[8] Since the 12(b)(2) and (b)(5) are affirmative defenses, this particular finding does not apply to M&T, which did not move for dismissal under Rule 12(b)(5). Moreover, although I do not discuss dismissal under Rule 41(b), as there are numerous reasons for dismissing this case, I also find that each of the factors set forth in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) warrants involuntary dismissal of this action. But, again, such a ruling would not extend to M&T, which did not raise this issue in its motion to dismiss. *See* Fed.R.Civ.P. 41(b)("If the plaintiff fails to … comply with these rules or a court order, a defendant may move to dismiss the action….").

### C. Curran's Amended Complaint.

Even assuming that the Court has both subject matter jurisdiction over Curran's claims and personal jurisdiction over the named defendants, and that service of process was proper, Curran's amended complaint should still be dismissed for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Rule provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Third Circuit most recently noted this evolving benchmark standard for legal sufficiency of a complaint instructing that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) continuing with our opinion in *Philips* [*v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*[, 556 U.S. 662], 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UMPC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel,*

*Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Supreme Court has stated that in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court in *Twombly* also stressed that the allegations and the supporting facts must raise a right to relief to something higher than a speculative level. *Id.* More recently, the Supreme Court refined these pleading requirements stating that the pleaded facts must amount to more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, when reviewing pleadings for sufficiency, the Supreme Court advises trial courts to:

> Begin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must-be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief.

*Id.* at 679.

As such, following *Twombly* and *Iqbal* a well-pleaded complaint must contain more than mere legal labels and conclusions and raise the plaintiff's claimed right to relief beyond the level of mere speculation. The Third Circuit advised that:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210–11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.

As well, in a case such as this, where a plaintiff raises a claim for fraud, Rule 9(b) of the Federal Rules of Civil Procedure sets forth a more stringent standard of pleading: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Rule 9(b) is limited by its terms to claims of mistake and fraud, but it applies to all cases where the gravamen of the claim is fraud or misrepresentation. *Toner v. Allstate Ins. Co.*, 821 F.Supp. 276, 283 (D.Del. 1993). The heightened requirements of Rule 9(b) are meant to protect defendants from frivolous suits that could potentially damage a defendant's reputation and goodwill. *See Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). The particularity requirement accomplishes this goal by giving notice of the specific misconduct at issue so the defendant can prepare a defense to the claim. *Toner*, 821 F.Supp. at 284. The requirement of specificity also prevents fraud claims meant as a fishing expedition to obtain material facts by way of the discovery process. *Id.* The heightened requirements of Rule 9(b) also apply to claims of intentional misrepresentation such as those alleged by Curran. *See id.*

The Third Circuit has determined that in order to comply with Rule 9(b)'s particularity requirement of a fraud claim, the following elements must be pled: (1) a specific false representation of material facts; (2) knowledge by the person who made the misrepresentation as to its falsity; (3) ignorance of its falsity by the person to whom the representation was made; (4) the intention that the representation should be acted upon; and (5) the plaintiff acted upon the false representation to his or her damage. *Walker v. Bank of America*, No. 3:12-CV-2607, 2013 WL 3353770, at *9 (M.D. Pa. June 24, 2013) (citing *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983)).

Last, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013). And, where fraud is alleged, the *pro se* litigant is not relieved of the pleading requirements under Rule 9(b). *Thomas v. Chase Bank*, No. 09-3803, 2010 WL 1948266, at *2 (E.D. Pa. May 14, 2010)(citing *Floyd v. Broan & Williamson Tobacco Corp.*, 159 F.Supp.2d 823, 832 (E.D. Pa. 2001)); *see also Scott v. Bank of America*, No. 12-12864, 2013 WL 5353231, at *2 (E.D. Mich. May 30, 2013).

### 1. Curran's Claims against M&T.

In his amended complaint, Curran sues M&T for fraud and breach of contract. *Doc.* 3 at 2. In addition to the Rule 9(b) particular pleading requirements, *supra*, "[u]nder Pennsylvania law, fraud, also referred to as intentional misrepresentation, contains the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[9] *Schnell v. Bank of New York Mellon*, 828 F.Supp.2d 798, 804–05 (E.D. Pa. 2011). But, here, there are no facts properly alleging fraud other than stating generally that he intends on suing M&T for such purpose, which is a conclusory allegation. Specifically, Curran provides no allegations that any representation was made by M&T that was made falsely or with the intent of misleading another person into relying on it.

Second, to make out a *prima facie* claim for breach of contract in Pennsylvania, a plaintiff must allege three elements: (1) the existence of a contract, (2) the breach of some duty imposed by that contract, and (3) resulting damages.

---

[9]    Here, the parties do not dispute that Pennsylvania law governs this action, and it is well-established that "federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern[s]…." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990).

*Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009)(quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). In this instance, Curran alleges only that he entered into a depositor's agreement with M&T. Noticeably missing from his amended complaint are the essential terms of the agreement, the parties' duties under the agreement, and the resulting damages that he incurred from the purported breach. Most notably, Curran does not attach a copy of the depositor's agreement to the complaint. Therefore, M&T's motion to dismiss for failure to state a claim should be granted.

### 2. Curran's Claims against the Law Firm and Gates.

In his amended complaint, Curran raises claims against the Law Firm and Gates for coercion, malpractice, slander, and libel. *Doc.* 3 at 3. Under Pennsylvania law, however, there is no tort of coercion. *Benigno v. Flately*, No. 01-CV-2158, 2001 WL 1132211, at *1 (E.D. Pa. Sept. 13, 2001). Nevertheless, to the extent that Curran's coercion claim can be construed as fraudulent misrepresentation, Curran has not pleaded with particularity, as required under Rule 9(b). While Curran makes reference to a particular letter that purportedly coerced him to make a payment under the contract at issue in *Shafik v. Curran*, he fails to supply the contents of the letter or allege whether he actually relied upon it. In fact, it is inferred that he was not coerced into doing anything as the underlying case involving that particular letter, materialized into a bench trial, resulting in a

judgment against Curran. Moreover, his allegation of coercion amounts to nothing more than a pure conclusory allegation, which is to be given no effect. *Iqbal*, 556 U.S. at 678.

Next, Pennsylvania law distinguishes between legal malpractice claims arising in civil and criminal representations. *Compare Storm v. Golden*, 371 Pa.Super. 368, 538 A.2d 61, 64 (Pa.Super.Ct. 1988) (civil) with *Slaughter v. Rushing*, 453 Pa.Super. 379, 683 A.2d 1234 (Pa.Super.Ct. 1996) (criminal). In a claim of malpractice in civil representation, such is at issue in this case, a plaintiff must allege "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Storm*, 538 A.2d at 64 (citing *Trice v. Mozenter*, 356 Pa.Super. 510, 515 A.2d 10 (Pa.Super.Ct. 1986) and *Schenkel v. Monheit*, 266 Pa.Super. 396, 405 A.2d 493, 494 (Pa.Super.Ct. 1979)). Curran, however, never once alleges that either the Law Firm or Gates were employed by him for the purpose of providing legal counsel or for any other related matter.[10]

Last, with respect to the Law Firm and Gates, Curran claims that they committed libel and slander when they introduced certain, unidentified, allegations

---

[10] What's more, it is doubtful that the Law Firm or Gates were ever Curran's attorney, given that they represented Shafik in the breach of contract action that resulted in a judgment against Curran.

in court, during *Shaffik v. Curran*. *Id.* Aside from failing to allege what those allegations were, Pennsylvania law provides that statements, otherwise defamatory, by judges, counsel, parties and witnesses in connection with a judicial proceeding are absolutely privileged if such statements are "pertinent, relevant and material to any issue" in the proceeding. *Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 578 (1967), *cert. denied*, 392 U.S. 907, *rehearing denied*, 393 U.S. 899 (1968); *Kemper v. Fort*, 219 Pa. 85, 67 A. 991 (1907). Thus, any of the statements either uttered or published by the Law Firm and / or Gates, during *Shafik v. Curran*, are barred by the absolute privilege protecting judicial proceedings. Accordingly, the Law Firm's and Gates' motion to dismiss for failure to state a claim should be granted.

### 3. Curran's Claims against Shafik.

Curran raises claims against Shafik for fraud, defamation, and libel. *Doc.* 3 at 4-5. But, just as he failed to do with respect to his other claims for fraud, Curran fails to plead with particularity as required to do under Rule 9(b). Specifically, Curran does not plead that Shafik was ignorant of the statement's falsity; rather, it is an allegation that Curran leaves to be inferred. Second, Under Pennsylvania law, the plaintiff in a defamation action has the burden of alleging the following seven elements:

> (1) The defamatory character of the communication.

> (2) Its publication by the defendant.

24

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa. Cons.Stat. § 8343(a).  Further, as referenced, *supra*, Pennsylvania courts have held that "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse," and therefore cannot be the basis of a defamation action.  *See Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323, 275 A.2d 53 (1971). "The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests." *Id.* at 324, 275 A.2d 53. "Moreover, the privilege extends not only to communications made in open court, but also encompasses pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest." *Pawlowski v. Smorto*, 403 Pa.Super. 71, 81, 588 A.2d 36 (1991).

Here, liberally construing his complaint, Curran does not come close to pleading the requisite elements to qualify a cause of action for defamation.

Moreover, Curran's claims for defamation and libel are barred by the absolute privilege protecting judicial proceedings. Therefore, Shafik's motion to dismiss for failure to state a claim should also be granted.

### 4. Leave to Amend.

The Third Circuit has taken a liberal approach to granting leave to amend pleadings, observing that leave should be granted freely in order to ensure that a particular claim is decided on "the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). Nevertheless, the Third Circuit has instructed that "undue prejudice is 'the touchstone for the denial of leave to amend.'" *Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) (quoting *Cornell and Company, Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978)) (citations omitted); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). In the absence of undue prejudice, "denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981) ((citing *Foman*, 371 U.S. at 182). Delay alone is not sufficient to justify denial of leave to amend. *See Arthur v. Maersk, Inc.*, 434 F.3d at 204. However, "at some point, the delay will become 'undue,' placing an

unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir.1984)). In this regard, "[d]elay may be come undue when a movant has had previous opportunities to amend a complaint." *Cureton*, 252 F.3d at 273 (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (three year lapse between filing of complaint and proposed amendment was unreasonable delay where the plaintiff had numerous earlier opportunities to amend); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654–55 (3d Cir. 1998) (denying proposed second amended complaint where the plaintiffs were repleading facts that could have been pled earlier).

In this matter, Curran should not be granted leave to amend. Not only has Curran already filed an amended complaint in this particular action, but these same claims were raised in another case and the defects were never cured. Moreover, Curran's history of dilatoriness and disregard for court orders cause me to believe that permitting him another opportunity to attempt to cure the defects in his pleading would not only delay these proceedings further, but also result in undue prejudice to the defendants. Consequently, Curran should not be granted leave to amend and his amended pleading should be dismissed with prejudice.

**D. Motion for Sanctions.**

Next, the Law Firm, Gates, and Shafik move for sanctions against Curran under Rule 11 of the Federal Rules of Civil Procedure. *Doc.* 20. Rule 11 authorizes the Court through the imposition of sanctions "to check abuses in the signing of pleadings." Fed.R.Civ.P. 11 Advisory Committee Notes (1983 Amendments); *see also Martin v. Brown*, 63 F.3d 1282, 1264 (3d Cir. 1995). "The purpose of Rule 11 is to deter litigation abuse that is the result of a particular 'pleading, written motion, or other paper' and, thus, streamline litigation." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 (3d Cir. 2008) (internal quotations omitted).

Under Rule 11(b), in submitting a pleading, contention, or denial, the lawyer or *pro se* party certifies that the submission is not frivolous, baseless, and has not been made for an "improper purpose." Rule 11(c) allows a court to impose sanctions on an attorney or party for violating Rule 11(b), as long as the party seeking sanctions complies with the Rule's "safe harbor" provision:

> [a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed.R.Civ.P. 11(c)(2). Thus, before seeking sanctions under Rule 11, a party must give notice of the alleged offending conduct and allow the opposing party 21 days in which to withdraw or otherwise correct the challenged submission. Compliance with this "safe harbor" provision is mandatory. *See Metropolitan Life Ins. Co. v. Kalenevitch*, 502 F.App'x 123, 125 (3d. Cir. 2012) "If the twenty-one day period is not provided, the motion must be denied." *Id.* (quoting *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008)).

Here, the docket reflects that on June 12, 2013, the defendants' motion for sanctions was simultaneously filed with the Court and served on Curran. *Docs.* 20-1 & 21-1. There is nothing in the record to reflect that the defendants waited 21 days under the safe-harbor rule before filing this motion separately from their motion to dismiss. As well, in neither their brief in support (*Doc.* 21) nor their reply brief (*Doc.* 26) do the defendants assert that Curran was provided with the requisite, pre-filing, notice. Accordingly, while the motion may have a valid basis in law and fact, I am precluded from granting it. The procedural steps mandated by Rule 11(c)(2) are not mere technical rules, but rather serve the substantial function of "giv[ing] the offending party a safe harbor within which to withdraw or correct the offending pleading." *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011).[11] In light of these considerations, the

---

[11] Curran did not challenge the Rule 11 motion on procedural grounds, but the

defendants' apparent failure to comply with Rule 11(c)(2) cannot be excused.

Thus, the motion for sanctions should be denied.[12]

### III. <u>Recommendations.</u>

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Curran's amended complaint be **DISMISSED** (*Doc.* 3) with prejudice;

(2) M&T's motion to dismiss (*Doc.* 13) be **GRANTED**;

(3) The Law Firm's, Gates', and Shafik's motion to dismiss (*Doc.* 17) be

> **GRANTED**;

(4) The Law Firm's, Gates', and Shafik's motion for sanctions (*Doc.* 20) be

> **DENIED**; and

(5) Curran's motion to strike (or alternatively construed as his sur-reply)

> (*Doc.* 27) be **STRICKEN** from the record;

---

Third Circuit suggests, in a non-precedential opinion, that such an issue can be raised *sua sponte*. *See In re Mondelli*, 508 F. App'x 131, 135, n. 5 (3d Cir. 2012)(noting that the parties' procedural dispute regarding a Rule 11 motion for sanctions was not raised by the parties in the district court).

[12]     Assuming that the Court adopts my recommendations to dismiss Curran's amended complaint, I note that the filing of another Rule 11 motion, subsequent to the dismissal of all of the claims, would also violate the safe harbor provision of Rule 11 because Curran would still not have had the opportunity to withdraw or correct the offending documents. Fed. R. Civ. P. 11(c)(1)(A); *Progress Fed. Sav. Bank v. Lenders Ass'n, Inc.*, No. 94-7425, 1996 U.S. Dist. LEXIS 1422, at *9-11 (E.D.Pa. Feb. 12, 1996) (filing Rule 11 motion after dismissal of claims violates safe-harbor provision).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **3rd** day of **December, 2013**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge